UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMPCO, LLC d/b/a<br>Kaufman Global, LLC,<br>    Plaintiff,<br><br>  vs.<br><br>IMPLEMENTATION SERVICES, LLC,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:08-cv-1481-RLY-TAB |

**ENTRY ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
and DEFENDANT'S CROSS MOTION FOR [PARTIAL] SUMMARY
JUDGMENT**

Plaintiff, TIMPCO, LLC d/b/a Kaufman Global, LLC ("Kaufman Global"), moves for partial summary judgment as to liability on its claims for breach of contract (Count IX) and copyright infringement (Count IV) against Implementation Services ("Implementation"). Defendant, Implementation Services, LLC ("Implementation"), cross moves for summary judgment on Kaufman Global's claims for civil conversion (Count V), breach of contract (Count IX), and violation of the Indiana Crime Victim's Act (Count VI). For the reasons set forth below, the court **GRANTS** in part, and **DENIES** in part, Kaufman Global's motion, and **GRANTS** Implementation Services, LLC's ("Implementation") cross motion for partial summary judgment.

**I.    Facts**

1.    On November 30, 2005, Kaufman Global entered into a written Asset Purchase

1

Agreement ("APA") with Implementation and certain of its related entities by which Kaufman Global purchased certain business assets of a subsidiary of Implementation pursuant to a written contract bearing that date. (*See* Plaintiff's Ex. A, APA[1]).

2. Kaufman Global paid approximately $2.3 million for the assets it purchased pursuant to the APA. (Plaintiff's Ex. D, First Modification of APA).

3. Among the assets purchased by Kaufman Global were certain items of intellectual property that were itemized within Schedule 1 of the APA. (APA § 1.1 and Schedule 1).

4. The intellectual property purchased by Kaufman Global included certain trademarked materials, copyrighted materials, marketing materials (including case studies and white papers), and proprietary methodologies (including without limitations the "20 Keys," "SLIM-IT," "Lean Leadership," and LDMS"). These items are described on Schedule 1 to the APA as intellectual property, domains, marketing materials, and training materials. (APA, Schedule 1).

5. Pursuant to the parties' APA, Kaufman Global granted a non-exclusive license to Implementation to use certain of the Intellectual Property described on Exhibit G to the APA ("the Exhibit G Materials") for a specified period of time (the "License

---

[1] Initial citations to the parties' exhibits will be cited as "[Party] Ex. _" followed by "[exhibit name]." Subsequent citations to a particular exhibit will be cited only by the "[exhibit name]."

Period") that expired on August 9, 2006, and subject to certain limitations set forth therein. (*See* APA § 4.5(a) and Exhibit G).

6. On multiple occasions during the License Period, Implementation used Exhibit G Materials in a manner not consistent with the requirements of the APA. (*See, e.g.,* Plaintiff's Ex. F, Deposition of Katherine Burt ("Burt Dep.") at 55-57, 61, 67-68, 78; Burt Dep. Exs. 4, 5, 6, 7, 8, 9, 14, and 15).

7. For example, Katherine Burt ("Burt"), Implementation's former vice president of internal operations, admitted to copying certain Kaufman Global case studies and Kaizen event reports as marketing materials to clients, and (improperly) included an Implementation Services copyright stamp[2] on the bottom of the documents. (Burt Dep. at 56-57).

8. After the License Period expired, Implementation was forbidden by the terms of the parties' Agreement (as modified) from using any of the Exhibit G Materials. (*See* APA § 4.5(a); First Modification of APA § 4.5).

9. Following the expiration of the License Period, Implementation nevertheless continued to use Kaufman Global materials. (*See, e.g.*, Burt Dep. at 81, 104-105, 113-115).

10. For example, Burt testified that she "created the Implementation Services Kaizen

---

[2] When counsel questioned Burt as to why Implementation included a copyright stamp on these documents, Burt replied, "I just always put a copyright stamp at the bottom of it. I don't know why or what the legal ramifications of it were." (Burt Dep. at 57).

events PowerPoint presentation by copying the Kaufman Global Kaizen events presentation." (Burt Dep. at 81).

11. Burt also testified that she "created the Milacron case study for [Implementation] by copying the Milacron case study for Kaufman Global." (*Id*. at 105; *compare* Burt Dep. Ex. 16, *with* Burt Dep. Ex. 17, *and* Burt Dep. Ex. 27, *with* Burt Dep. Ex. 28).

12. Indeed, Implementation's CEO, Roger Kaufman ("Kaufman"), admitted to multiple breaches of its contractual obligations to Kaufman Global with respect to the Exhibit G Materials. (*See* Plaintiff's Ex. E, Deposition of Roger Kaufman ("Kaufman Dep.") at 71-72 ("We think there are about 20 odd times when we violated our agreement, the purchase agreement, regarding intellectual property.")).

13. Kaufman Global holds a registered copyright in a written work known as The Carrot Story, which it purchased pursuant to the APA. (*See* APA, Schedule 1; Plaintiff's Ex. I, Certificate of Copyright Registration).

14. Implementation removed Kaufman Global's name from the publication, replacing Kaufman Global's name and logo with its own. (*Compare* Plaintiff's Ex. J (Kaufman Global's version) *with* Plaintiff's Ex. K (Implementation's version)).

15. Implementation also identified itself, rather than Kaufman Global, as the owner of the relevant copyright, by adding the language "Copyright 1998 © Implementation Services, LLC" to the last page of the publication. (The Carrot Story (Implementation's version)).

16. In 2007, Michael Plageman ("Plageman") of Implementation, took copies of The Carrot Story (containing Implementation's logo) and included it in a package of information for a trade show. (*See* Plaintiff's Ex. H, Deposition of Michael Plageman ("Plageman Dep.") at 34-35, 68; Kaufman Dep. at 68).

17. In September 2007 – more than a year after the License Period expired – Plageman distributed two or three packets, which included copies of The Carrot Story (containing Implementation's logo), to a sales presentation with the chief operating officer of the Siemens Company. (Plageman Dep. at 103; Burt Dep. at 111-12).

18. The following year, in May 2008, Implementation had The Carrot Story translated into Russian for use with a "high potential client in Russia." (Plaintiff's Ex. L, The Carrot Story (Implementation's Russian Version); Kaufman Dep. at 65-66). The only items in Implementation's Russian version of The Carrot Story that are in English are Implementation's name and logo, its address and website URL, and "Copyright 1998 © Implementation Services, LLC." (*Id.*).

19. Kaufman Global's expert, Michael A. Einhorn, Ph.D. ("Dr. Einhorn"), opines that Kaufman Global suffered approximately $2.2 million in damages as a result of Implementation's misconduct. (*See* Plaintiff's Ex. A-1, Confidential Expert Report of Michael A. Einhorn, Ph.D.).

20. In arriving at his damages calculation, Dr. Einhorn employed the "value of use" methodology. (*Id.*).

## II. Summary Judgment Standard

Disposition of a case on summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The record and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996).

The moving party bears the burden of demonstrating the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden may be met by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. If the moving party meets its burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must present specific facts to show that there is a genuine issue of material fact. FED. R. CIV. P. 56(e); *see also National Soffit*, 98 F.3d at 265 (citing *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991)).

## III. Discussion

### A. Count IV, Copyright Infringement

In Count IV, Kaufman Global alleges that Implementation violated its copyright in The Carrot Story by: (1) distributing two or three copies of The Carrot Story to a client for a sales presentation in 2007; (2) including a copy of The Carrot Story in a package of

information for a trade show in 2007; and (3) by translating The Carrot Story into Russian, affixing its own logo on the copy, and sending the copy to a prospective Russian client in 2008. Implementation concedes that translating The Carrot Story into Russian and sending it to a prospective client in Russia are acts of copyright infringement. Accordingly, the court will only discuss the first two alleged acts of infringement listed above.

A plaintiff alleging copyright infringement must establish the following two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). A person "copies" another's work for purposes of copyright law if the person "distributes copies without the copyright owner's authorization." *Janky*, 576 F.3d at 361. The parties agree that Kaufman Global owns a valid copyright in The Carrot Story. Thus, the issue presented is whether Implementation "copied" – *i.e.*, distributed – The Carrot Story to others in violation of the Copyright Act.

Implementation argues that there is no evidence that it actually distributed copies of The Carrot Story to third parties. However, in order to prevail, Kaufman Global is not required to show actual distribution. The Seventh Circuit has held that merely making copyrighted material *available* to others is an act of copyright infringement. *See Capitol Records, Inc. v. Koyate*, 2008 WL 2857237, at *7 (N.D. Ind. July 22, 2008) ("[U]nauthorized sharing of sound recordings by making them available to others have

been assumed by the Seventh Circuit and the United States Supreme Court to be acts of reproduction and distribution . . . .") (citing *BMG Music v. Gonzales*, 430 F.3d 888, 889-91 (7th Cir. 2005)); *see also Capitol Records v. Mattingly*, 461 F.Supp.2d 846, 850 (S.D. Ill. 2006) (finding a prima facie case of copyright infringement where the defendant made plaintiff's copyrighted sound recordings "available for distribution to others"). In *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, the Fourth Circuit likewise held that making copyrighted material available to third parties is sufficient to show distribution. 118 F.3d 199, 203 (4th Cir. 1997) ("When a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public."). Given the reasoning of the cases cited above, Implementation's actions of including The Carrot Story in packets of information for use at a trade show and for its clients and/or prospective clients are acts of distribution.

In addition, the Copyright Act gives the copyright holder the exclusive right to display publicly the copyrighted work. 17 U.S.C. § 106(5). Thus, Implementation infringed on Kaufman Global's copyright in The Carrot Story simply by displaying it on the table at the trade show. (*See* Plageman Dep. at 104). Kaufman Global's Motion for Partial Summary Judgment on Count IV of its Complaint is therefore **GRANTED**.

  **B. Count IX, Breach of Contract**

Kaufman Global alleges that Implementation breached the parties' APA by misusing Kaufman Global's intellectual property while the parties' licensing agreement

was in effect, and by continuing to use its intellectual property after the licensing agreement expired. The elements for a breach of contract claim are: (1) the existence of a valid contract; (2) the defendant's breach of that contract; and (3) damages resulting from the breach. *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1048 (Ind. Ct. App. 2003). As the first element is not in dispute, the court will begin its discussion with whether Implementation breached the parties' APA both before and after the License Period expired.

### 1. Breach of Contract

Resolution of the parties' motions for summary judgment with respect to this claim requires the court to interpret the meaning of the parties' contract, as embodied in the APA. The primary and overriding purpose in contract interpretation is to ascertain and give effect to the parties' mutual intent at the time the contract was written. *Hutchinson, Shockey, Erley & Co. v. Evansville Vanderburgh County Bldg. Auth.*, 644 N.E.2d 1228, 1231 (Ind. Ct. App. 1994). If the terms of the contract are unambiguous, the terms are conclusive of the parties' intent. *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999), *trans. denied*. However, where the provisions of a written contract are ambiguous, the court may resort to parole evidence or other means to determine the parties' intent. *Keithley's Auction Service v. Children of Jesse Wright*, 579 N.E.2d 657, 659 (Ind. Ct. App. 1991). A contract is ambiguous if reasonably intelligent people could find the contract's provisions susceptible of more than one interpretation. *See Indiana Dep't of Transp. v. Shelly & Sands*, 756 N.E.2d 1063, 1069-70 (Ind. Ct. App. 2001) (citing

*Bernstein v. Glavin*, 725 N.E.2d 455, 459 (Ind. Ct. App. 2000), *trans. denied*)); *TRW, Inc. v. Fox Dev. Corp.*, 604 N.E.2d 626, 630 (Ind. Ct. App. 1992). Finally, in construing a contract, "a court must accept a construction so as not to render words, phrases, or terms ineffective or meaningless." *Kiltz*, 708 N.E.2d at 603.

### a. During the License Period

Exhibit G to the APA, entitled Licensed Intellectual Property, is at the heart of the parties' dispute. As the title to the exhibit suggests, this document listed the items of intellectual property that Kaufman Global licensed to Implementation during the License Period (which expired on August 9, 2006). The items were separated into categories with certain limitations. For example, The Carrot Story was listed under the category "Articles and Such" with the designated limitation "shared/no modifications," and Rapid Improvement Event Reports was listed under the category "Case Studies" with the limitation "shared, but no changes." (APA, Ex. G).

Implementation admits that it removed Kaufman Global's logo from the Exhibit G materials in question and replaced them with Implementation's logo. It argues, however, that Exhibit G does not define the terms "modify" or "change," and that therefore, there is a material issue of fact as to whether its actions constitute a modification or change under the APA.

Implementation's argument is at odds with Section 4.5 of the APA, which provides, "Credit shall be given to Buyer as the owner of the Licensed Intellectual Property when used by [Implementation], Bourton Group or Seller." (APA § 4.5(a); *see*

10

*also* APA, Exhibit G (noting that case studies and the like can only be used in hard copy form and with attribution to Kaufman Global)). In other words, the parties specifically agreed that Implementation would credit Kaufman Global as the owner of the intellectual property every time Implementation used Kaufman Global's intellectual property. Thus, there can be no reasonable interpretation of the APA except that the wholesale replacement of Kaufman Global's logo with Implementation's logo is a modification or change under the APA.

Implementation also argues that copying and pasting materials is not a modification or change because Implementation "did not alter the nature or content of the Exhibit G materials." (Response Brief at 11). Implementation's argument fails to mention that Implementation not only copied and pasted materials, but also removed Kaufman Global's logo and inserted its own logo. (*See* Burt Dep. Exs. 6, 7, 8, 9, 14, 15). No reasonably intelligent person would interpret the parties' APA as allowing Implementation to remove old information from a document and inserting new information in its place. As these actions fit squarely within plain meaning of the "modification" and "change," the court finds that Implementation breached this obligation systematically and repeatedly through its use of Exhibit G materials during the License Period.

### b. After the License Period

#### 1. Kaizen Event Presentation and Related Case Studies

Implementation argues that there is a genuine issue of material fact as to whether it breached the APA after the license period expired. Specifically, Implementation argues that although Burt admitted to creating Implementation's Kaizen events PowerPoint presentation by copying the Kaufman Global's "Kaizen Events Presentation" after the licensed period expired, Kaufman Global failed to present evidence that Burt used the specific Office Kaizen materials listed in Exhibit G – *i.e.*, the Office Kaizen "white paper," Office Kaizen "training materials," and the Office Kaizen Book "case study." In the same vein, Implementation argues that although Burt admitted to creating Implementation's case study by copying Kaufman Global's Milacron case study, Kaufman Global failed to present evidence that the Milacron case study is listed in Exhibit G.

Schedule 1 of the APA listed all of the assets that Kaufman Global purchased, including "Case Studies (~60)" and "Rapid Improvement Event Reports[3] (~150)." (*See* APA, Schedule 1). There is no dispute that Kaufman Global owns these materials. If these materials were not covered by Exhibit G, then Implementation never had any right

---

[3] "Rapid Improvement Event Report" is simply another name for Kaizen Event Report. Implementation's own PowerPoint materials define a Kaizen Event as a "rapid improvement event." (Burt Dep. Ex. 14). Both Burt and Plageman testified that a Rapid Improvement Event Report is also known as a Kaizen Event, a Kaizen Event Report, and a Blitz. (Burt Dep. at 52-53; Plageman Dep. at 55-56).

to use them in the first place because they would not have been within the range of intellectual property that Kaufman Global licensed to Implementation. Thus, even if the materials at issue were not listed in Exhibit G, Implementation was in breach of the APA by using Kaufman Global case studies and event reports as its own.

### 2. The Carrot Story

As noted previously, The Carrot Story was listed under "Articles and Such" in Exhibit G. Implementation admits to sending a copy of The Carrot Story in Russian to a prospective client in 2008, approximately two years after the termination of the License Period. Accordingly, by sending The Carrot Story to its Russian prospect, Implementation breached the APA.

In addition, Section 4.5(b) of the First Modification of the APA provides that "[t]he Seller Parties shall surrender to Buyer, or destroy to the satisfaction of Buyer, all copies (regardless of medium) of the Licensed Intellectual Property . . .". It is undisputed that copies remained in Implementation's storage warehouse after the License Period expired. Accordingly, Implementation breached the APA by failing to surrender or destroy old copies of The Carrot Story after the License Period expired.

### 2. Damages

Implementation cross-moves for summary judgment on grounds that Kaufman Global cannot prove that it was damaged as a result of Implementation's actions. In response to Implementation's cross-motion, Kaufman Global submitted the expert report of Dr. Einhorn, who concludes that, in his opinion, Implementation "saved a total of

13

$2,215,850 by appropriating without authorization each of a total of 81 distinct documents." (Confidential Expert Report of Michael A. Einhorn, Ph.D., at 3). As noted by Implementation, Section G of his report, entitled "Damages for Copyright Infringement," Dr. Einhorn arrives at this damage number by estimating the number of man hours and multiplying by the estimated hourly rate to determine the cost for recreating the materials allegedly infringed by Implementation.

The theory Dr. Einhorn uses to support his assessment of damages is known as "value of use." This theory has been accepted by the Seventh Circuit as a basis for estimating actual damages in copyright cases. *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 360-61 (7th Cir. 1985) (citing *Sid & Mary Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)). The idea behind "value of use" is that a plaintiff can recover damages from the infringer based upon "the value of the use of the copyrighted work to the infringer." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) (citing *Deltak*, 767 F.2d at 360).

The problem for Kaufman Global is that Dr. Einhorn's damage methodology does not apply to Kaufman Global's breach of contract claim. *See McRoberts*, 328 F.3d at 565-71 (7th Cir. 2003) (calculating copyright infringement damages based on a value of use theory, but awarding wholly different damages for plaintiff's breach of contract claim); *O'Connor v. Cindy Gerke & Assocs., Inc.*, 300 F.Supp.2d 759, 774-75 (W.D. Wis. 2002) (permitting plaintiff to argue the value of use measure of damages for its copyright infringement claim while at the same time granting defendant's motion for summary

14

judgment as to plaintiff's breach of contract claim on the theory that plaintiff suffered no damages). A valid breach of contract claim requires damages resulting from the breach of the parties' contract. *Bank One, Nat'l Ass'n v. Surber*, 899 N.E.2d 693, 704 (Ind. Ct. App. 2009). Although the parties' APA addressed, at least in part, Kaufman Global's intellectual property, the measure of damages for a breach of contract is a wholly separate inquiry from the measure of damages for a copyright infringement claim. In other words, the damages claimed by Dr. Einhorn in his expert report cannot be said to have been the direct result of Implementation's breach of the parties' APA. Accordingly, the court must **GRANT** Implementation's cross-motion for [partial] summary judgment on Kaufman Global's breach of contract claim.

### C. Conversion and Crime Victim's Act

Implementation also moves for summary judgment on Kaufman Global's claims for breach of the Indiana Crime Victim's Act and civil conversion. The elements to establish a claim for conversion are the same as those found in the criminal conversion statute. *Anderson v. Indianapolis, Indiana AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 838 (Ind. Ct. App. 1997). "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . ." IND. CODE § 35-43-4-3. Damages recoverable as a result of civil conversion are limited to actual losses sustained as a proximate result of the conversion. *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983). It is also necessary for the plaintiff to prove that he suffered a pecuniary loss. *McLemore v. McLemore*, 827 N.E.2d 1135, 1144 (Ind.

15

Ct. App. 2005) (affirming trial court's denial of conversion claim where plaintiff "failed to present evidence that he suffered any pecuniary loss" as a result of the conversion).

The Indiana Crime Victim's Act permits a person to bring a civil action against another person for certain criminal offenses. In order to bring a claim under the Indiana Crime Victim's Act, a plaintiff must suffer a "pecuniary loss" as a result of the alleged criminal conduct. IND. CODE § 34-24-3-1. If a plaintiff has not suffered any pecuniary damages, the plaintiff has no claim for relief under the statute. *Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assocs.*, 758 N.E.2d 931, 945 (Ind. Ct. App. 2001) (reversing award in favor of plaintiff on the ground that "no actual damages apart from attorney fees and costs of litigation were established"); *Bridgeforth v. Thornton*, 847 N.E.2d 1015, 1029 (Ind. Ct. App. 2006) (holding that plaintiff "suffered no pecuniary loss and that, therefore, the Trustees cannot recover under the Crime Victim's Relief Act.").

As is evident from the above, in order to recover on its claims for civil conversion and the Indiana Crime Victim's Act claims, Kaufman Global must present evidence that it suffered a pecuniary loss. Dr. Einhorn's expert report does not discuss any monetary loss suffered by Kaufman Global as a result of Implementation's alleged criminal conduct/conversion. Moreover, the court is aware of no cases wherein a court applied the value of use damages model to these types of claims. Because the value of use model has no application to these claims, Kaufman Global has failed to establish the fundamental element of pecuniary loss. Accordingly, the court must **GRANT** Implementation's cross

motion with respect to these claims.

## IV. Conclusion

For the reasons set forth above, the court **GRANTS** Kaufman Global's Motion for Partial Summary Judgment as to liability (Docket # 44) with respect to its claim for copyright infringement (Count IV), and **DENIES** Kaufman Global's motion with respect to its claim for breach of contract (Count IX). In addition, the court **GRANTS** Implementation's Cross-Motion for [Partial] Summary Judgment (Docket # 49) with respect to Kaufman Global's claims for breach of contract (Count IX), conversion (Count V), and the Indiana Crime Victim's Act (Count VI).

**SO ORDERED** this 29th day of September 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com

Stacy Walton Long
KRIEG DEVAULT LLP
slong@kdlegal.com

Fred Anthony Paganelli
TAFT STETTINIUS & HOLLISTER LLP
paganelli@taftlaw.com

Greg A. Small
KRIEG DEVAULT LLP
gs@kdlegal.com

Alastair J. Warr
KRIEG DEVAULT LLP
awarr@kdlegal.com